FILED

2010 Nov-16  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| LANDON ROBINSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 4:09-CV-456-VEH** |
| | ) | |
| OFFICER R. J. LANKFORD, | ) | |
| individually, | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by the Defendant, Officer R. J. Lankford (hereinafter "Lankford"), on July 6, 2010. For the reasons set forth below, the motion is due to be **GRANTED.**

## PROCEDURAL BACKGROUND

The Plaintiff, Landon Robinson (hereinafter "Robinson"), filed his complaint in this court under 42 U.S.C. § 1983, on March 9, 2009, against Defendant, Officer R. J. Lankford. In his complaint, Robinson alleged claims of excessive force; retaliation for petitioning for redress of grievances; false arrest and malicious prosecution; and assault and battery. On July 6, 2010, the Defendant filed his motion seeking summary judgment on all of the Plaintiff's claims. The Plaintiff filed a

response (doc. 30) on July 28, 2010.  The Defendant filed a reply (doc. 33) on August

6, 2010.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023

(11th Cir. 2000).  The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion, and identifying those

portions of the pleadings or filings which it believes demonstrate the absence of a

genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party

has met its burden, Rule 56(e) requires the non-moving party to go beyond the

pleadings and, by its own affidavits, or by the depositions, answers to interrogatories,

and admissions on file, designate specific facts showing that there is a genuine issue

for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are

irrelevant.  *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable

inferences are resolved in favor of the non-movant. *See, e.g., Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that

the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

4

# FACTUAL BACKGROUND[1]

On May 17, 2008, "at 10:40 p.m., Drake Whorton called the police to his residence to file a complaint of theft of property" against his cousin, Landon Robinson, the plaintiff in this case. (Pl.'s AF 3; Def.'s AF 3).[2] The Defendant in this case, Officer Lankford, responded to the call. (Def.'s AF 3). Whorton claimed that Robinson stole certain items from his home, including a set of golf clubs, a driver, and a rod and reel, among other things. (Def.'s Ex. 7, Incident/Offense Report, doc. 23-7, pp. 1-2, filed June 1, 2010). Whorton told Lankford that Whorton owned the

---

[1]Keeping in mind that, when deciding a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[2]The Plaintiff has admitted certain facts as set forth by the Defendant in his Statement of Facts in Defendant's Brief in Support of Summary Judgment. These facts are referred to herein as "admitted facts," and are cited as "Def.'s AF," and refer to the Defendant's Statement of Facts in the Defendant's Brief, doc. 29, filed on July 6, 2010. In Plaintiff's Response to Motion for Summary Judgment, Plaintiff also sets forth "Additional Undisputed Facts." (*See, e.g.*, Pl.'s Resp., doc. 30, p. 2, filed July 28, 2010). To the extent that the Defendant does not dispute these facts in Defendant's reply, the facts from Plaintiff's fact statement are referred to herein as "admitted facts," and are cited as "Pl.'s AF," and refer to the Plaintiff's Statement of Additional Undisputed Facts as set forth in Plaintiff's Response to Motion for Summary Judgment, doc. 30, pp. 2-8. The Plaintiff also set forth Additional Disputed Facts in the Response, doc. 30, pp. 8-10. To the extent that the Defendant does not dispute these facts in his reply, these facts are referenced herein as "Pl.'s Addt'l AF," and refer to the Plaintiff's Additional Disputed Facts as set forth in Plaintiff's Response to Motion for Summary Judgment, doc. 30, pp. 8-10.

house in which Robinson was living with their grandmother.  (Def.'s AF 4).

"Lankford took the [incident and offense] report to the station."  (Def.'s AF 5).

Later that same night, Robinson and his mother noticed someone outside the

home of Robinson's grandmother, where Robinson was living at the time.[3]

(Robinson Dep., doc. 23-1, p. 6:3-10).  Robinson and his mother believed that the

person was trying to break into Robinson's truck.  (Robinson Dep., doc. 23-1, p.

45:13-16).  Robinson walked outside while his mother, Mona Robinson, called the

police.  (Pl.'s AF 7).

At 11:51 p.m., Lankford was dispatched to the home on Taylor Street because

of a "disturbance."  (Def.'s AF 1).  "While en route, [Lankford] was advised that

dispatch had received another 911 call from that location (perhaps somebody

breaking in)."  (Def.'s AF 2).  Unbeknownst to Robinson and his mother, Whorton

and a friend, Danny, had also called the police.  (Pl.'s AF 8).  Officers Lankford and

Snyder arrived shortly thereafter.  (Pl.'s AF 7).  Lankford was the first to arrive.

When he arrived, he saw Whorton and his friend, Danny, standing in the driveway.

(Lankford Dep., doc. 23-6, pp. 58:21 - 59:7).  Whorton and his friend told Lankford

that they found the items that Whorton had earlier reported as stolen.  (Lankford Dep.,

---

[3]The home is located on Taylor Street, and is referred to herein as "the home on Taylor Street."

6

doc 23-6, pp. 58:15-18; 59:10-12).  "Lankford then went to talk to [Robinson's] mother, who had come outside."  (Pl.'s AF 7).

While Lankford was attempting to talk to Robinson's mother, Robinson began to get upset and started pacing.  (Lankford Dep., doc. 23-6, pp. 60:1-5; 63:3-20). Lankford asked a question, and Robinson "spoke up."  (Robinson Dep., doc. 23-1, p. 62:17).  According to Lankford, Robinson was belligerent, and "was getting more agitated, more flustered, more aggressive."  (Lankford Dep., doc. 23-6, p. 67:1-9). Lankford placed handcuffs on Robinson, explaining to Robinson that it was for officer safety and for Robinson's safety.  (Robinson Dep., doc. 23-1, p. 62:18; Lankford Dep., 23-6, p. 68:14-17).  After placing cuffs on Robinson, Lankford lifted Robinson's arms up behind Robinson's back. (Robinson Dep., doc. 23-1, p. 62:21-22).  Robinson began raising his voice and asking Lankford why he was doing that. Lankford raised his arms even higher.  (Robinson Dep., doc. 23-1, pp. 62:22 - 63:2). According to Robinson, Lankford slammed Robinson into the patrol car, breaking or displacing the side mirror in the process.  (Robinson Dep., doc.23-1, p. 63:3-9). Lankford then "opened the back door of the vehicle as if he was going to put [Robinson] inside," but instead, "[Lankford] placed his forearm on the back of [Robinson]'s neck and squeezed his face against the back window of the vehicle." (Pl.'s Statement of Undisputed Fact, ¶¶ 16-17, citing Robinson Dep. 62:21 - 65:3).

Then, as Lankford was placing Robinson in the car, Robinson hit his head on the way into the car. (Robinson Dep., 64:23 - 65:3). During the time that Lankford was taking Robinson to the car, Lankford was using profanity and calling Robinson names. (Pl.'s AF 14). Lankford denied using excessive force against Robinson. (Lankford Dep., doc. 23-6, p. 120:15-23).

Robinson testified that he remained in the car for approximately two hours. (Robinson Dep., doc. 23-1, p. 64:1-2). The car was hot, but Officer Snyder cracked the window for Robinson. (Robinson Dep., doc. 23-1, p. 64:3-4). Robinson's hands felt numb because the cuffs were so tight. (Robinson Dep., doc. 23-1, p. 64:4-7). Robinson "had cut marks on his wrists for about two weeks" following the incident. (Pl.'s AF 4). In addition, Robinson's "ribs, head and wrist continued to hurt the night of the incident." (Pl.'s AF 5). Robinson "had a bruise on his ribs and a bruise on his head for two or three weeks." (Pl.'s AF 6). Robinson did not, however, seek medical treatment for any of these injuries. (Robinson Dep., doc. 23-1, pp. 142:23 - 143:5).

"The officers confiscated some golf clubs and some fishing rods that they found while searching the property." (Pl.'s AF 27). Robinson was taken out of the car and uncuffed. (Robinson Dep. 82:2-8). Soon afterward, the officers and Whorton, along with his friend, left the home on Taylor Street. (Robinson Dep. 84:8-13; 88:21-23). Lankford had no estimation for the length of time that Robinson was

8

in the patrol car, but Lankford recalled that he placed Robinson in the patrol car about 20 to 25 minutes into the two-hour incident.  (Lankford Dep., doc. 23-6, pp. 88:21 - 89:2; 92:17 - 93:2).

"On or about May 19, 2008, [Robinson] filed a Citizen Complaint Form with the Glencoe Police Department," in which "he complained of the events of the night of May 17, 2008, which continued into the morning of May 18, 2008." (Pl.'s AF 28). Subsequently, Robinson was charged with theft, (Robinson Dep. 119:1 - 121:1; 125:14-20; 127:10-14; Chambers Dep., doc. 23-10, 72:1-16), and was arrested. (Robinson Dep., doc 23-1, p. 106:17-19). The charge was ultimately dismissed. (Robinson Dep., 127:20-23).

## DISCUSSION

### I.  Robinson's Fourth Amendment Excessive Force Claim Pursuant to 42 U.S.C. § 1983:

Lankford contends that he is entitled to qualified immunity on Robinson's excessive force claim because Robinson's allegations about the force that Lankford used against him is not a constitutional violation.  Lankford further contends that, even if the conduct is a constitutional violation, Lankford's conduct "was not so unreasonable or unconstitutional in the light of existing law so as to preclude the application of qualified immunity." (Def.'s Br. in Support of Mot. for Summ. J., doc.

29, p. 15, filed July 6, 2010).  For these reasons, Lankford contends that he is entitled to summary judgment on this claim.

Robinson contends that Lankford "subjected [Robinson] to unreasonable and excessive force by cuffing him and raising his arms higher behind his back when he questioned Lankford's actions, beating him repeatedly against the side of the patrol car with enough force to break or displace the side mirror, slamming him against the back of the car, pressing his face on the back window of the car, and hitting his head when putting him in the back seat in violation of the Fourth Amendment to the United States Constitution."  (Pl.'s Resp. to Mot. for Summ. J., doc. 30, pp. 14-15, filed July 28, 2010).  Robinson contends that "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."  (Pl.'s Resp., doc. 30, p. 17, *citing Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002)).  Robinson argues that, because he was in his own front yard and his mother had called the police to come to the home, the officers had no reason to suspect that there was any danger to them.  In addition, he claims that just because he was loud and using profanity did not justify Lankford's actions in using excessive force against him.  Moreover, he claims that whether Lankford's use of force was reasonable under the circumstances is a question for the jury.  (Pl.'s Resp., doc. 30, p. 18, *citing*

*Dominguez v. Metrolpolitan Miami-Dade County*, 167 F. App'x 147, 150 (11th Cir. 2006).

"In civil rights actions brought under § 1983, the doctrine of qualified immunity 'offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Penley v. Eslinger*, 605 F.3d 843, 849) (11th Cir. 2010), *citing Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (other citation omitted).  The court must use a "multi-step, burden shifting qualified immunity analysis," as follows:

> In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. . . .  Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.

*Penley*, 605 F.3d at 849, *quoting Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).  "In evaluating whether a plaintiff has met his burden, '[t]he threshold inquiry . . . is whether [the] plaintiff's allegations, if true, establish a constitutional violation.'" *Penley*, at 849, *quoting Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (*citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)).  "If the facts, construed as they

must be in this summary judgment [motion] in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010), *citing Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Brown*, 608 F.3d at 734, *citing Pearson v. Callahan*, 555 U.S. ____, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009).

Thus, the court must first determine whether the officer "'was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Brown*, 608 F.3d at 734, *quoting Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  The parties in this case agree that Officer Lankford was acting in the scope of his discretionary authority when the allegedly wrongful acts occurred.  Because this step has been met, the court will next determine whether Robinson's allegations establish a constitutional violation.

In determining whether Robinson's allegations establish a constitutional violation, the court must consider whether the force used by Lankford was unreasonable.  "The Fourth Amendment's 'objective reasonableness' standard supplies the test to determine whether the use of force was excessive." *Penley v.*

12

*Eslinger*, 605 F.3d 843, 849-50 (11th Cir. 2010), *citing Crenshaw v. Lister,* 556 F.3d 1283, 1290 (11th Cir. 2009).  "Accordingly, courts must 'careful[ly] balanc[e] . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Penley*, 605 F.3d at 850, *citing Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (internal quotation marks omitted).  The "reasonable" analysis "'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] ... actively resist[ed] arrest or attempt[ed] to evade arrest by flight.'" *Penley*, at 850, *citing Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (citations and internal quotes omitted).  "'The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.'" *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008), *quoting Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir.2004).  "'In order to determine whether the amount of force used by a police officer was proper, a court must ask "whether a reasonable officer would believe that this level of force is necessary in the situation at hand."'" *Zivojinovich*, 525 F.3d at 1072, *quoting Lee v.*

*Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted). "This must be decided 'on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Zivojinovich*, at 1072, *quoting Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (internal quotation marks omitted).

Robinson complains that Lankford used excessive force in raising Robinson's arms higher behind his back.  Under the circumstances, from the perspective of a reasonable officer in Lankford's position, raising Robinson's arms higher behind Robinson's back was not an unreasonable use of force.  Lankford was at the home on Taylor Street in response to two 911 calls.  In addition, Lankford had taken a report from Whorton, who claimed that Robinson had stolen some of his property. At the time that Lankford handcuffed Robinson, Robinson was getting louder, was pacing, and was belligerent.  "Under these circumstances, using an uncomfortable hold to escort an uncooperative and potentially belligerent suspect is not unreasonable." *Zivojinovich*, 525 F.3d at 1072, *citing Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

Robinson also complains that Lankford used excessive force in slamming Robinson against the car, pressing his face into the back window, and hitting Robinson's head when putting Robinson in the back seat of the patrol car.  "A law

enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010) (citation omitted). "For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing onto walls." *Brown*, 608 F.3d at 740 (citations omitted). "The excessive force standard is based on reasonableness. It looks to the need for force, the amount of force used, and the injury inflicted." *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997), *citing Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986).

The facts viewed in the light most favorable to Robinson show that Lankford slammed Robinson against the car, displacing the mirror; pressed Robinson's face against the back window; and hit Robinson's head while placing Robinson in the back seat. While use of force may have been unnecessary, "the actual force used and the injury inflicted were both minor in nature." *Jones*, 121 F.3d at 1460. Under these circumstances, "the application of the excessive force standard would not inevitably lead an official in [Lankford's] position to conclude that the force was unlawful." *Jones*, at 1460-61. Accordingly, Lankford is entitled to qualified immunity on Robinson's excessive force claim.

## II.  Robinson's False Arrest Claim Pursuant to 42 U.S.C. § 1983:

The court cannot discern from Robinson's response to the motion for summary

judgment, under the section entitled "Argument 42 U.S.C. § 1983 False Arrest/Malicious Prosecution," the nature of his false arrest claim, its factual basis, or the argument in support thereof.  (Pl.'s Resp., doc. 30, pp. 21-22, filed July 28, 2010). Based upon Lankford's brief in support of motion for summary judgment, it is apparent that Lankford initially believed that Robinson's false arrest claim arose out of Robinson's arrest on the theft charge, which occurred subsequent to the events on the night of May 17, 2008.  Robinson's response, however, does not mention the arrest.  Instead, it appears that Robinson's "false arrest" claim is based upon his contention that Lankford lacked probable cause to detain him and place him in the patrol car.  If so, this claim should more appropriately be referred to as an unlawful or wrongful detention claim.  Clearly, Robinson cannot maintain a claim for false arrest arising out of the events on the night of May 17, 2008, because Lankford did not arrest Robinson.  To the extent Robinson may have asserted a wrongful or unlawful detention claim concerning the events on the night of May 17, 2008, Robinson has, by virtue of his summary judgment filings, essentially abandoned that claim by failing to clearly articulate the factual basis for his claim and by failing to cite authority supporting his position.  *See, e.g., McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's

complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").  Even though Robinson has waived any such claim, the court will consider the claim that he was unlawfully detained without probable cause.

"Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny, an investigatory detention can be supported by reasonable suspicion; however, an arrest, i.e. the seizure of a person, must be supported by probable cause." *U.S. v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007).  "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citations omitted).  "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiffs.'" *Brown*, 608 F.3d at 734 (citations omitted).  Robinson was handcuffed and placed in the patrol car for an hour and a half to two hours.  Such a lengthy detention may exceed the boundaries of a *Terry* stop.  Nevertheless, based upon the totality of the circumstances, Lankford had arguable probable cause, as opposed to mere reasonable suspicion needed for a

17

*Terry* stop, to detain Robinson.  This finding is supported by Robinson's agitated condition, the earlier report that Robinson had stolen property from Whorton, and the fact that Lankford was on the scene following two 911 calls.   Under these circumstances, an officer reasonably could have believed that probable cause existed to detain Robinson.  For this reason, Lankford is entitled to qualified immunity on this claim.

## III.  Robinson's Claim of Assault and Battery:

Lankford contends that he is entitled to discretionary function immunity under the Peace Officer Immunity Statute, Ala. Code § 6-5-338.  According to Lankford, he was engaged in a discretionary function when he was dispatched to the home on Taylor Street on the night of May 17, 2008.  He further contends that he was operating within the line and scope of his duties when he detained Robinson. Lankford therefore claims that he is entitled to immunity on Robinson's claim of assault and battery.

In his response, Robinson contends that Lankford assaulted and battered him without justification and subjected him to unreasonable and excessive force by handcuffing him, slamming him against the side of the patrol car, and by hitting his head while putting him in the back seat of the patrol car.  Robinson did not address the immunity issue.

"Under Alabama law, '[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010), *citing Ex parte Hayles*, 852 So.2d 117, 122  (Ala. 2002).   Alabama's state-agent immunity doctrine "bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise." *Brown*, 608 F.3d at 740-41, *citing Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000); *see also Ex parte Butts*, 775 So.2d 173, 177-78 (Ala. 2000) (the court formally adopted the *Cranman* test).   In addition, Section 6-5-338 of the Alabama Code provides discretionary-function immunity for "law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties." *Brown*, 608 F.3d at 741, *citing* Ala. Code § 6-5-338(a) (1994).  "*Cranman's* test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a)." *Brown*, at 741, *citing Ex parte City of Tuskegee*, 932 So.2d 895, 904 (Ala.2005) ("The restatement of State-agent immunity as set out in *Cranman*, 792 So.2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)."). To

19

determine whether immunity applies, the court must apply the following burden-shifting framework:

> A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle the agent to immunity. *Ex parte Estate of Reynolds*, 946 So.2d 450, 452 (Ala.2006). "If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id.*

*Brown*, at 741.  As the court noted above, the parties agree that Lankford was acting within the scope of his discretionary functions as a law enforcement officer.  Thus, the burden shifts to Robinson to show that Lankford acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority.  As the court determined above, Lankford's use of force against Robinson was not a constitutional violation.  Robinson has otherwise failed to show that Lankford's use of force was willful, malicious, fraudulent, in bad faith, or beyond his authority.  Therefore, Lankford is entitled to state-agent and statutory, discretionary function immunity on Robinson's assault and battery claim.

## IV.  Robinson's Claims of Retaliation for Petitioning for Redress of Grievances and Malicious Prosecution Pursuant to 42 U.S.C. § 1983:

Robinson conceded these claims in his response to the motion for summary judgment.  Therefore, Lankford is entitled to summary judgment on these claims.

## **CONCLUSION**

For the reasons set forth above, Lankford's Motion for Summary Judgment is

due to be **GRANTED.**  A separate order will be entered.

**DONE** and **ORDERED** this the 16th day of November, 2010.


**VIRGINIA EMERSON HOPKINS**
United States District Judge